# United States Court of Appeals
## For the Eighth Circuit
_____

No. 13-1495
_____

In re: Dudley R. Webb, Jr.; Peggy J. Webb

*Debtor*s

------------------------------

Bank of England

*Appellant*

v.

M. Randy Rice

*Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: January 13, 2014
Filed: February 6, 2014
_____

Before LOKEN, MURPHY, and SMITH, Circuit Judges.
_____

Entered On Docket: 02/06/2014

MURPHY, Circuit Judge.

When Dudley and Peggy Webb filed for Chapter 7 bankruptcy in February 2012 they listed in their bankruptcy schedules a large volume of rice grain and farming equipment owned in connection with the "Dudley R. Webb, Jr. Farms Joint Venture." The Bank of England asserted that it had a perfected security interest in this property arising out of unpaid loans between this joint venture and the bank. The bankruptcy trustee disagreed and sought an injunction to prevent the bank from exercising control over the rice grain and equipment. At an emergency hearing the bankruptcy court[1] granted a permanent injunction against the bank, concluding that the joint venture was not a separate partnership entity and thus the property belonged to the estate and the trustee could immediately sell it for the estate's benefit. The district court[2] agreed, and we affirm.

Spouses Dudley and Peggy Webb executed a joint venture agreement in January 2003 to operate a rice farming business under the name "Dudley R. Webb, Jr. Farms Joint Venture." The agreement specified that each of them would have a 50% interest in the business, and that "during the duration of this partnership" both parties "shall . . . exercise their utmost skill, effort and endeavor for the furtherance of the interests, profits, benefits and advantage of this joint venture." Paragraph 13 of the agreement stated that "[n]othing herein shall be construed to create a partnership of any kind." During the operation of their business the Webbs borrowed funds from the Bank of England located in England, Arkansas, and from the United States Department of Agriculture Commodity Credit Corporation. Many of these loan agreements were executed in the name of the joint venture.

---

[1] The Honorable Audrey R. Evans, United States Bankruptcy Judge for the Eastern District of Arkansas.

[2] The Honorable D. Price Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

The Webbs jointly filed a Chapter 7 bankruptcy petition in February 2012. The couple listed in their bankruptcy schedules an ownership interest in an estimated 105,000 bushels of rice located in grain bins, an estimated 117,000 bushels of rice located at the Federal Dryer and Storage Company, and certain vehicles, rolling stock, and farm equipment. In early March 2012 the Bank of England filed in the bankruptcy court a motion for relief from the automatic stay imposed under 11 U.S.C. § 362, arguing that it had a perfected security interest in this rice and equipment arising out of nine unpaid loans made by the bank to the joint venture. The court scheduled a hearing on the bank's motion for April 26, 2012.

Then on March 29 the bankruptcy trustee, M. Randy Rice, filed a complaint seeking an order authorizing him to sell all of the Webbs' remaining rice grain free and clear of liens, claims, and encumbrances. He explained the need to sell the grain to avoid infestation or spoliation, but requested that all liens, claims, and encumbrances attach to the proceeds from the sale for the determination of the parties' rights at a later time. The next day trustee Rice received a letter from the bank's attorney indicating that the bank intended to liquidate the rice and equipment sometime after April 2 because "the rice bushels are not property of the [Webbs'] bankruptcy estate but are property belonging to a separate entity, Dudley R. Webb Jr. Farms Joint Venture." In response to this letter the trustee filed a motion for temporary restraining order, preliminary injunction, and emergency hearing. The bankruptcy court issued a temporary restraining order and set the matter for emergency hearing on April 11.

At the hearing the bankruptcy court heard testimony from Dudley Webb, bank representative Joey Adams, and trustee Rice, and reviewed over seventy exhibits. Dudley Webb testified that he did not differentiate joint venture property from his individual property, but rather treated assets "all one in the same." He explained that the couple created the joint venture to ensure that Peggy Webb had an interest in the farming operations as "more than just my wife or spouse" and to help her establish

credit.  Documents submitted at the hearing indicate that the Webbs reported their income from the farming operations on Schedule F of their Form 1040 individual tax returns rather than on a Form 1065 partnership return, and Dudley Webb testified that he submitted copies of these tax forms to the Bank of England.  He also explained that he never prepared any bills of sale to transfer property to the joint venture at the time it was created.  Neither party produced evidence indicating that the joint venture was registered as a separate entity with the Arkansas Secretary of State's office.

Relying on this testimony and related documentation, the bankruptcy court determined at the hearing that the joint venture created by the Webbs was not a general partnership or other separate legal entity.  Thus, the rice grain and equipment listed in the name of the Webbs' joint venture was owned by the Webbs individually and should be included in the bankruptcy estate.  The court entered a permanent injunction enjoining the Bank of England from taking control of the assets and ordered that the trustee sell the contested rice grain and hold the proceeds from the sale in an estate account pending the determination of the various parties' rights.  The bankruptcy court issued a written order to this effect on July 3, 2012.

The Bank of England appealed to the United States District Court for the Eastern District of Arkansas.  The district court affirmed, concluding that the record indicated that the Webbs had not intended to form a partnership.  It further concluded that the bankruptcy court had jurisdiction to determine whether the rice grain was part of the Webbs' bankruptcy estate.  It thus had jurisdiction to issue an injunction and authorize the trustee to sell the rice grain.  The bank appeals.  We apply the same standards of appellate review as the district court, in reviewing the bankruptcy court's factual findings for clear error and its conclusions of law de novo. In re M & S Grading, Inc., 526 F.3d 363, 367 (8th Cir. 2008) (citing In re Cedar Shore Resort, Inc., 235 F.3d 375, 379 (8th Cir. 2000)).

The Bank of England now challenges the bankruptcy court's determination that the joint venture assets belonged to the estate. Under 11 U.S.C. § 541(a)(1) the bankruptcy estate is comprised of "all of the debtor's legal and equitable property interests that existed as of the time that the bankruptcy petition is filed." In re Mahendra, 131 F.3d 750, 755 (8th Cir. 1997). Bankruptcy courts look to state law to determine the nature and extent of a debtor's interest in particular property because "[p]roperty interests are created and defined by state law." Id. (internal citation omitted). Arkansas law specifies that partnership assets are not the property of an individual partner's bankruptcy estate under § 541. In re Burnett, 241 B.R. 438, 439 (Bankr. E.D. Ark. 1999) (internal citations omitted). The Bank of England asserts that the Webbs' joint venture was a partnership under Arkansas law and that the rice grain and equipment should therefore be excluded from the couple's bankruptcy estate. We disagree.

While a "joint venture" can be a partnership if it fits the definition of such an entity, an association is not classified as a partnership simply because it is called a "joint venture." Uniform Law Comment 2 to Ark. Code Ann. § 4-46-202. Joint ventures have notable differences from general partnerships. These differences include "the ad hoc nature of joint ventures, or their concern with a single transaction or isolated enterprise, plus the fact that loss-sharing is not as essential to joint ventures as it may be for partnerships." Slaton v. Jones, 195 S.W.3d 392, 397 (Ark. App. 2004). Under Arkansas law the question of whether a partnership exists depends primarily on the intent of the parties to form and operate a partnership, a question of fact. Gammill v. Gammill, 510 S.W.2d 66, 68 (Ark. 1974). As a joint venture "is a relationship founded entirely upon contract," where there is an existing contract "that document will be controlling as to what was the parties' intention." Slaton, 195 S.W.3d at 397.

In considering the fact record presented in this case, the bankruptcy court determined that the Webbs had not created a partnership or any other separate legal

entity. The court looked first to the language of the joint venture agreement, noting that paragraph 13 specifically states, "[n]othing herein shall be construed to create a partnership of any kind." It also considered the testimony of Dudley Webb, who stated that there was no difference between the joint venture and himself, and that the couple created the joint venture to establish his wife's credit and to ensure that she had an equal interest in the farming operation. The court found it significant that the Webbs did not file a partnership tax return, but instead included their farming income on their individual tax returns, that there were no bills of sale transferring property from the Webbs to the joint venture at the time it was created, and that the Webbs listed assets which the bank asserts belonged to the joint venture as individually listed assets on various loan applications. In addition the bankruptcy court noted that the joint venture had never been registered as a separate entity with the Arkansas Secretary of State.

The Bank of England objects to the bankruptcy court's conclusion. First, the bank argues that the joint venture agreement is the only controlling evidence of whether a partnership exists in this case. It asserts that the bankruptcy court clearly erred in looking to other testimonial and documentary evidence because the agreement demonstrates a clear intention to create a separate entity. We agree that where a joint venture agreement exists, "that document will be controlling as to . . . the parties' intention." Slaton, 195 S.W.3d at 397. Paragraph 13 of the joint venture agreement in this case supports the bankruptcy court's determination that the Webbs had not intended to create a separate entity.

Even if we were to conclude that the language of paragraph 13 is not dispositive, as the bank claims, we would then look to the other provisions in the agreement. These provisions, for example that the parties "agree to create an entity for purposes of a joint venture" and mandating the equal division of profits, could only create ambiguity as to the Webb's intent if they were read together with paragraph 13. And where a contract is ambiguous, the trial court may consider

-6-

evidence outside the four corners of the agreement. See First Nat'l Bank of Crossett v. Griffin, 832 S.W.2d 816, 819 (Ark. 1992) (internal citations omitted). At the hearing Dudley Webb testified that he treated his property "all one in the same," that the agreement was drafted to increase his wife's involvement and establish her credit, that he never transferred property to the joint venture or executed a bill of sale, and that the couple claimed the property on their individual tax forms. After reviewing this evidence, we conclude that the bankruptcy court did not clearly err in its determination that the Webbs did not intend to create a separate entity. Cf. In re Curtis, 363 B.R. 572, 578 (Bankr. E.D. Ark. 2007).

The Bank of England next argues that the Webbs and the trustee should be estopped under Ark. Code Ann. § 4-46-308 from asserting that the joint venture is not a partnership or separate legal entity because they held themselves out as a partnership when entering into loan transactions. The Webbs did not raise this argument before the bankruptcy court or the district court. We will not consider such an argument unless it were to "involve[] a purely legal issue in which no additional evidence or argument would affect the outcome of the case." First Bank Investors' Trust v. Tarkio Coll., 129 F.3d 471, 477 (8th Cir. 1997) (internal citations omitted). To assert estoppel under this Arkansas statute the bank must show that it relied on the Webbs' representation in executing the loan agreements. This showing has not been made on the record here, and thus we conclude that the argument is waived. See id. at 476–78.

The bank additionally argues that public policy compels reversal because while the condition that influenced the bankruptcy court's decision—namely, the threat of irreparable harm if the rice grain spoiled or became infested—is no longer a concern, the court's ruling "will continue to negatively impact [the bank] and other creditors both in this case and in all other dealings with persons purporting to be operating a joint venture." While we recognize the bank's concern about the potential impact of this injunction on other issues in the bankruptcy case, only those in this single

-7-

adversary proceeding are before us. The trustee sought an injunction here directly in response to the bank's attempt to exercise authority over the disputed rice grain without awaiting a ruling from the bankruptcy court. Moreover, in his motion for temporary restraining order, preliminary injunction, and emergency hearing, the trustee specifically requested a hearing on both his complaint and the bank's motion for relief from the stay. In sum, we do not agree that public policy compels a reversal.

The Bank of England finally argues that the bankruptcy court erred by applying a "separate entity" test as part of its decision, because Arkansas law does not mandate the registration of a general partnership in order for it to be legally formed and valid. The bankruptcy court did not consider the lack of entity registration to be determinative of whether the Webbs formed a partnership. As discussed above, the court did examine at length the language of the joint venture agreement as well as the other evidence presented before reaching its decision. We conclude that the court's reference to the lack of entity registration merely served as further evidence of the Webbs' intent.

In sum, we conclude that the bankruptcy court did not clearly err in its holding that the Webbs had not created a separate legal entity and that the rice grain was thus part of the Webbs' individual bankruptcy estate under 11 U.S.C. § 541. The bankruptcy court therefore had jurisdiction to authorize the trustee to sell the rice grain. The question of whether the Webbs' entity was a partnership was a core proceeding necessary to determine if the rice was part of the bankruptcy estate. 28 U.S.C. § 157(b)(2)(A). If property is determined to be part of the bankruptcy estate, the bankruptcy court may authorize the trustee to sell it under 11 U.S.C. § 363.

Accordingly, we affirm the order of the district court resolving this appeal from the bankruptcy court.

_____